WILLIAM W. GREEN, administrator, &c., of MARIA BRIGHAM, deceased, *v.* MARY ANN GIVAN and others.

Where the executrix of the estate of N. E. received as collateral security the assignment of a mortgage held in trust, for the payment of a personal debt of the trustee due to the estate, for which assignment there was no legal consideration, and the executrix collected the moneys due on such mortgage and distributed the same among the next of kin and legatees of said estate, in an action brought by the *cestui que trusts* against such next of kin and legatees, to recover the moneys thus distributed to them as proceeds of said mortgage, *Held*,

That such next of kin and legatees were liable therefor.

That the rights of the parties were not altered by the fact that the defendants received, at the same time, other moneys than those arising out of such mortgage.

That receiving the plaintiff's money without giving value for it, they are liable therefor, though mixed with other money belonging to them at the time of receiving it.

The answer of the executrix admitting the receipt of the money upon such mortgage and thus distributed, is admissible, and binding upon the defendants made parties after her death by bill of revivor and supplement.

The General Term of the Supreme Court have jurisdiction of an appeal to the chancellor from the decision of a vice chancellor, declaring the rights of the complainants, and referring the matters to a master for the proper accounting, which appeal was pending at the time the Court of Chancery was abolished by the Constitution, &c., in 1846.

APPEAL from judgment of Supreme Court.

In June, 1830, Henry H. Evertson and Maria E. Evertson, only children of Walter Evertson, filed their bill in the late Court of Chancery, setting forth that in Nov., 1810, Walter Evertson, their father, made and published his will, by which, after giving his wife $5,000 in lieu of dower, he directed that the remainder of his estate should be converted into money, the interest of which to be applied to the support of the complainants during their minority, and at the expiration thereof such remainder to be divided equally between them, and appointing his wife, his brother, George B. Evertson, and Cornelius C. Roosevelt, executors of such will, and guardians of the complainants; that in June, 1811, the testator died, being seized and possessed of considerable real and personal estate,

and leaving his said will unrevoked and in full force ; that in April, 1812, George B. Evertson proved the will, and took upon himself the office of executor and the sole burden of administration, the other executors named never acting ; that as such acting executor he took possession of the testator's real and personal estate, to a large amount in value, and therefrom satisfied and paid the legacy of $5,000 given to the testator's widow in lieu of dower, leaving what remained of the estate belonging of right to the complainants ; that of the proceeds of said estate belonging to the complainants, the sum of $6,000 or thereabouts was invested by the said George B. Evertson in a certain bond and mortgage executed by one James W. Stephens, in favor of said Evertson and one John Givan, for $11,000, with interest, the said Givan being the proprietor of the remaining $5,000 of said bond and mortgage ; so that Evertson, in behalf of the complainants, and John Givan, on his own account, were severally interested in the amounts of $6,000 and $5,000 respectively. That said mortgage was charged on certain machinery in a manufacturing establishment known as the Dutchess Cotton Factory, near Poughkeepsie, and although the bond and mortgage were not in point of form executed to the said George B. Evertson, together with said John Givan, in his capacity of such acting executor, or as guardian of the complainants under said testator's will, yet said bond and mortgage were actually given and received at the time of the execution thereof, for $6,000 of the money and estate of the said Walter Evertson, deceased, together with the said $5,000 belonging to said Givan, and that the same were and are, to the extent of the said $6,000, the equitable and rightful property of the complainants, under the will of the said Walter Evertson, deceased. That the complainants are informed and believe that instead of protecting their rights and interests in this respect, the said George B. Evertson, contrary to his duty as such acting executor, assigned the said bond and mortgage, or at least the sum of $6,000, parcel of the money secured thereby, to one Eliza Evertson, widow and acting executrix of one Nicholas Evertson, deceased, for the purpose and under the pretense of

securing an antecedent debt due from him to the estate of the said Nicholas Evertson, deceased, and that no consideration was paid in that behalf by said executrix, or by any other person in behalf of the said estate ; that since said assignment some moneys have been received by the said assignee upon the bond and mortgage, but to what amount the complainants are ignorant; that after the execution of said assignment, a bill was filed in the equity court of the Second Circuit, in the name of the said George B. Evertson and John Givan, together with said executrix of Nicholas Evertson, deceased, as complainants, against Joshua Dyett and wife, William Hammersly and William Chapman, defendants, who had become possessed of the equity of redemption of the mortgaged premises, the object of which bill was to foreclose such equity and have the premises sold to pay the debt secured by said mortgage; that such proceedings were had in the suit that afterwards a decretal order was made therein affirming the lien of the mortgage, and directing a sale of the mortgaged premises to satisfy the debts thereby secured.    That subsequently to such decretal order one or more arrangements of compromise were entered into by the parties to the suit for extending the time of payment under such mortgage ; that neither the complainants or any person in their behalf were parties to such suit or such arrangements of compromise, nor had any knowledge or notice thereof at the time; that Eliza Evertson claims to be the proprietor of the complainants' share or interest in the said bond and mortgage, by virtue or in consequence of the assignment executed by the said George B. Evertson; that the said George B. Evertson died in 1829, intestate, and utterly insolvent, and largely indebted to the estate of Walter Evertson, deceased, aside from the transaction of the bond and mortgage ; that the complainants well hoped that the said Eliza Evertson, executrix of said Nicholas Evertson, deceased, who now claims to be the proprietor of complainants' proportion of the said bond and mortgage, would have relinquished said claim in favor of the complainants, and to that end they have made one or more friendly overtures to her on the subject, but she has

wholly refused to recognize the complainants' just rights and equities in this behalf, or in any manner to regard the same. The bill concluded with the prayer that the said Eliza Evertson, widow and executrix as aforesaid, may account to the complainants for any moneys received by her upon said bond and mortgage, or by reason thereof; that the said bond and mortgage, and all benefits thereof, and of the said decretal order made thereon, excepting only the interest of said John Givan and his assigns in the same, may be decreed to the complainants, and that the executrix be restrained from collecting the complainants' portion thereof, and for further relief.

Eliza Evertson appeared and answered as executrix of Nicholas Evertson, deceased. In her answer she admitted that the complainants were the only children and next of kin of Walter Evertson, deceased; that said Walter Evertson made and published his will in his lifetime, and made such disposition of his property, and appointed the executors and guardians as alleged in the bill of complaint, and that George B. Evertson acted as the sole executor of said will and testament and guardian of complainants. She alleged that she is not informed nor does she believe that $6,000 of the proceeds of the estate of Walter Evertson were invested by George B. Evertson in the bond and mortgage mentioned in the bill of complaint. She admitted that the interest of George B. Evertson and John Givan in the bond and mortgage was $6,000 and $5,000 respectively, as charged in the bill, and that the mortgage was upon the machinery in the Dutchess Cotton Factory, but alleged that said bond and mortgage was not, either in point of form or of fact, executed or given to George B. Evertson in his capacity of executor of Walter Evertson's will, but was received by George B. Evertson in his individual capacity alone, and for his individual benefit, and that the complainants have no right or interest in the same. She further admitted that George B. Evertson assigned his interest in the bond and mortgage, amounting to about $6,000, to her, on 29th April, 1826, for the benefit of the estate of Nicholas Evertson, the said Geo. B. having been employed by the executors of said estate to invest and

put out money belonging to said estate; and gave the assignment as part payment for such moneys then in his hands. That she is advised that such indebtedness of George B. Evertson to the estate of her testator formed a good and valuable consideration for such assignment, and that no notice whatever was given to her of any claim or interest whatever, in behalf of the estate of Walter Evertson, or of the complainants, at the time said assignment was made, and if any such notice had been given, she believes that other good and available security for such debt so due to the estate of her testator, might then have been obtained from the assignor. She further admitted that since the assignment, and about 1st November, 1828, she received $800, as assignee of the said bond and mortgage; that in May, 1826, a bill to foreclose the equity of redemption on the mortgaged premises, was filed, as alleged in the complaint, and about eighteen months thereafter a decretal order was obtained, directing a sale of the mortgaged premises; that such premises were accordingly advertised for sale, and have since been sold under another decretal order, obtained from chancery, by one Joshua Dyett, subject to the lien and incumbrance of said mortgage; and that at said sale, one Andrew Bache was the purchaser, who has made arrangements with the defendant to pay and satisfy her claim and interest in and to the mortgaged property. She further admitted that George B. Evertson died in 1829, intestate, but was ignorant whether he was utterly insolvent, although she understood and believed that his affairs were embarrassed; and that the guardian of Maria E. Evertson, one of the complainants, applied to her, before the present suit was commenced, to submit to arbitration the respective claims of herself, as executrix, and complainant, to the mortgage, but that she declined to do it.

This answer was put in under oath, in July, 1830. In January, 1831, the executrix put in a further answer, under oath, in which she admitted that George B. Evertson assigned his interest to her, in the bond and mortgage mentioned, on the 29th April, 1826, for the benefit of the estate of Nicholas Evertson; that no consideration was paid at the time of

the assignment; and that the same was made to her for the securing of a debt before that time, due from George B. Evertson to the estate of Nicholas Evertson, deceased, and then remaining unpaid. She further admitted that since her former answer, she, as executrix of Nicholas Evertson, deceased, and as assignor of said bond and mortgage, had received six-elevenths of the proceeds of three promissory notes, for $1,000 each, made 31st March, 1830, payable in six, twelve and eighteen months after date, in part payment and satisfaction of said bond and mortgage; that the moneys received on said notes is all that she has received, in cash or otherwise, on the bond and mortgage, in payment therefor. By proofs taken in the cause, it appears that some time previous to April, 1822, George B. Evertson, John Givan and James W. Stephens, were jointly concerned as the owners and proprietors of the Dutchess Cotton Factory, and carried on the same as copartners, and Evertson and Givan afterwards sold out their interest in the factory to Stephens, and retired from the firm. Upon adjusting their accounts with him a large balance was found due to each of the retiring partners. To secure payment of a part of their balances, Stephens, on the 16th April, 1822, executed a joint bond to them for $11,427, with interest; and further to secure the payment thereof, he executed to them a mortgage upon the machinery in the factory, in which bond and mortgage Givan was interested to the amount of $5,000, and the residue of the debt belonged to Evertson. Stephens sold out his interest in the manufacturing establishment and machinery to Chapman & Hammersly, trustees of a Mrs. Dyett, in the spring of 1823. The purchasers were desirous that a great part of the purchase-money should remain on mortgage, but Evertson, being in want of his money to pay off a debt to the Manhattan Bank, would not consent to wait for the money due him on the mortgage given by Stephens on the machinery. He agreed, however, to accommodate the purchasers, by substituting $6,000 of the money in his hands belonging to the estate of Walter Evertson, and let it remain upon the mortgage until Henry H. Evertson, the eldest of

the complainants in this cause, should become of age, about eight years thereafter. It was accordingly arranged between the parties that Chapman and Dyett, together with Stephens, should give a new bond to George B. Evertson and Givan, for $11,000, to secure the loan of the moneys belonging to the estate of Walter Evertson, and the $5,000 due Givan, and that the old bond and mortgage should remain as collateral security for the payment of the moneys for which the new bond was given. The new bond was accordingly given on the 1st May, 1823, and George B. Evertson, instead of receiving the $6,427 from Chapman & Hammersly, the trustees of Mrs. Dyett, and paying back to them the $6,000 belonging to the estate of her brother, Walter Evertson, received only the balance of $427, and substituted the $6,000 belonging to the complainants in this case, by retaining that amount of their money in his hands, and applying it for his own purposes. The old bond and mortgage were accordingly indorsed down to $11,000, of which $5,000 belonged to Givan and the residue to the estate of the complainants' father. And Chapman and Dyett, at the same time, added a schedule of some new articles of machinery to the mortgage, as a part thereof, and to increase the security. The bonds and mortgage were, at the time, and frequently afterwards, recognized by George B. Evertson, both by his letters and by parol admissions and declarations, as security for the money belonging to the estate of his deceased brother, Walter Evertson, and the interest thereon, as the principal means upon which the complainants were dependent for their support.

On the 29th April, 1826, George B. Evertson, being indebted to the estate of Nicholas Evertson, deceased, by a written assignment, assigned and transferred to the defendant, as executrix of Nicholas Evertson, the bonds and mortgage on the machinery, by way of collateral security for moneys due to said estate, and without prejudice to her right to proceed against him, to compel payment of his debt, notwithstanding the assignment.

The cause was heard on the pleadings and proofs, on the

27th June, 1831, before the vice-chancellor of the first circuit, who ordered and decreed that the complainants have an equity in the securities in the pleadings mentioned as against the estate of George B. Evertson, deceased; but that such equity being latent, as regards the defendant in the cause, ought therefore to be postponed to the equity vested in her by the assignment of the said George B. Evertson in her favor, executed on the 29th April, 1826. And he ordered that it be referred to a master to state the account of the defendant, as executrix, with the estate of George B. Evertson, &c.

The complainants appealed from this order or decree to the chancellor, and at a court of chancery, held on 27th June 1836, it was ordered, adjudged and decreed, that such order or decree of the vice-chancellor be, and the same is, reversed, with costs of appeal; and it was adjudged, declared and decreed, that the complainants are entitled to the moneys secured in the name of George B. Evertson, by the bonds and mortgage, in the pleadings and proofs in this cause mentioned, or so much thereof as it shall appear was due from the said George B. Evertson at the time of his death to the complainants, on account of the estate of their father, Walter Evertson, deceased.

It was therefore ordered that it be referred to one of the masters of the court, to ascertain the amount then due, or at least so far as is necessary to determine that an indebtedness existed to the extent of the said securities, or the money secured thereby in the name of the said George B. Evertson, and the interest thereon from the time the interest thereon was last paid to the said George B. Evertson, or for the benefit of the said complainants. And that the said master also ascertain what has been received by the defendant, and what is still due on said bonds and mortgage, and that he compute and allow interest as shall be just, and that he make his report with all convenient speed, and all further questions and directions, including the question of costs, were reserved until the coming in of the master's report. (See *Evertson* v. *Evertson*, 5 Paige, 644.)

No appeal was ever taken from the chancellor's order or decree. Eliza Evertson, the defendant in the action, died on the 14th March, 1837, whereby the cause abated.

In 1840, the present bill was filed in the nature of a bill of revivor and supplement. It made parties defendants, David B. Ogden, surviving executor of Nicholas Evertson, deceased, John Givan, and Mary Ann, his wife, Adeline, wife of Edgar Evertson, deceased, Eliza How Evertson, Henry S. Richards, James Nicholas Richards, and Henry Richards, the latter being the heir-at-law, next of kin or legatees, of both Nicholas Evertson and Eliza Evertson. The bill states the pleadings, proceedings and decrees in the original action against Eliza Evertson, as executrix; that she died on 14th March, 1837; -that she left two children and heirs-at-law living at the time of her death, viz., Mary Ann, wife of John Givan, and Edgar Evertson; that Edgar Evertson lately died intestate, leaving a widow named Adeline and one child, Eliza How Evertson, about eleven years old; that Margaret Smith, a daughter of Eliza Evertson, and wife of Henry S. Richards, died before her mother, leaving her husband, Henry S. Richards, and two children, viz., James Nicholas, about ten years old, and Henry, about eight years old, surviving her; that all the assets of Nicholas Evertson, deceased, were paid over and distributed by his widow and late acting executrix, Eliza Evertson, in her lifetime, among the children and legatees of the said Nicholas Evertson, being Mary Ann Givan, Edgar Evertson and Margaret Smith Richards, such payments being made, in fact, to the respective husbands of Mary Ann Givan and Margaret S. Richards; that considerable sums of money and property received by Eliza Evertson by means of said bond and mortgage were treated by her as assets of the estate of Nicholas Evertson, and included in the payments made to his heirs and legatees; that the complainants had made frequent application to the heirs and legatees of Nicholas Evertson, deceased, before named, and also to the heirs and next of kin of Eliza Evertson, deceased, or some of them, either to satisfy their just demands or consent to the revival of the suit for the recovery thereof, in such form and manner as the course and

practice of the court would allow; but they have neglected and refused to acknowledge their just rights and equities, or to give any countenance or facility to the recovery thereof by a revival of the suit or otherwise. Answers were to be made without oath, the oath being waived. All the defendants put in answers. The adults admitted the proceedings and decrees in the suit against Eliza Evertson, executrix, and, with the exception of Ogden, the surviving executor, admitted that they were children and legatees, &c., of Nicholas Evertson. Four of the five adult defendants, viz., David B. Ogden, the surviving executor, John Givan, and Mary Ann, his wife, and Adeline Evertson, widow of Edgar Evertson, deceased, severally admitted upon oath (although the oath had been waived) "that all the assets of the estate of Nicholas Evertson," which had come to the hands of his executrix in her lifetime, "were by her paid over and distributed to and among the children and legatees of the said Nicholas Evertson, deceased." Richards, the remaining adult defendant, denied this statement upon information and belief. The infant defendants, by their guardians *ad litem*, put in the usual answer of infants.

Replications were filed, and the cause was brought to a hearing, without new proofs, on the 22d March, 1843, before the assistant vice-chancellor of the first circuit. He made an order declaring that all the interest which George B. Evertson had in the bonds and mortgage (six-elevenths), and all the proceeds thereof realized by Eliza Evertson, after the assignment, either as executrix of Nicholas Evertson, deceased, or otherwise, belong to the complainants in the cause; and he ordered the cause to be referred to a master for the proper accounts, with a direction (among others) to inquire and report "to whom, in particular, as heirs, legatees or distributees of the said estate, and in what proportions or amounts the administered assets have been paid, so as to ascertain the rate of contribution proper for those parties, in order to satisfy the plaintiff's demand."

From this order the defendants appealed to the chancellor, but owing to causes not explained in the case, this appeal was not brought to a hearing until February, 1850. The

Court of Chancery had then been abolished, and the suit and proceedings, under the judiciary act of 1847, had passed into the Supreme Court. In February, 1850, the appeal was heard at a General Term of the Supreme Court. After counsel had argued the appeal, the court made an order, as follows: "It appearing to the court that said decretal order (the order of the assistant vice-chancellor, made 22d March, 1843) was made without the evidence being exhibited as to the liability of the appellants, or some of them, to answer to the respondents as accounting parties under the decretal order, made in the cause by the late chancellor of the State, under date of 27th June, 1836, and which the present bill of revivor and supplement seeks to enforce; to the end, therefore, of giving the parties an opportunity of showing who are, or who are not, proper accounting parties under the said decretal order of the 27th June, 1836, it is hereby ordered and adjudged, that the said decretal order appealed from as aforesaid, and which bears date 22d March, 1843, be, and the same is wholly reversed and annulled; and it is further ordered that it be referred to Lucius Robinson, Esq., to take such proofs as shall be offered by the respective parties touching the accountability of the respondents, or any of them, under the said decretal order of 27th June, 1836, sought by the present bill to be enforced as aforesaid."

Under the last mentioned order (all the parties appearing) testimony was taken, and several persons who, in the meantime, by intermarriage and otherwise, had become interested in the subject matter of the suit, were made defendants.

The cause again came on to be heard at a Special Term of the Supreme Court, on the 22d March, 1854, when an order of reference was made to Lucius Robinson, 1st. To take and state an account of six-elevenths of said bond and mortgage from their date to the date of the referee's report. 2d. To take and state an account of moneys received by Eliza Evertson, executrix, or which she might, with reasonable care and deligence, have collected upon, or by means of said bond and mortgage, with interest to date of report. It was recited in the order, that it appears by the proofs taken, that the estate

of Nicholas Evertson, deceased, had been fully administered by his executrix, and the assets thereof, to an amount greatly exceeding the debt due to the complainants on said bond and mortgage, had been paid over in equal *third* parts to the three children of Nicholas Evertson, deceased, viz., Mary Ann Givan, Margaret L. Richards and Edgar Evertson, who survived him, or to the persons representing their shares, &c.; that the estate of Eliza Evertson has also been fully administered, and the assets paid over to the same persons to whom her husband's estate was paid, or some of them; but that some of the said persons interested have since died, leaving wills disposing of their property, and their estates are still partly in the hands of their executors, who have been brought in as defendants, it was therefore ordered that the referee inquire and report which of the defendants (if any), or of those whom any of the defendants represent, as trustees, executors, administrators, devisees, legatees, heirs-at-law, or next of kin, received any portion of the moneys collected in any way by said Eliza Evertson from or by means of said bond and mortgage, and how much each defendant, or the person or persons whom each defendant represents, as aforesaid, so received, and how the same was received, whether directly as part of the money derived from the bond and mortgage, or as part of the assets of Nicholas Evertson's estate, or of Eliza Evertson's estate, or how otherwise; and whether the property of any of the defendants has directly or indirectly, and how, had the benefit of the said bond and mortgage, and to what extent; also, which defendants, or those whom they represent, have received any portion of the estate of Eliza Evertson, and in what proportions and sums, and the interests, and in what proportions the defendants, or any of them (if any), are accountable for the money (if any) which Eliza Evertson ought to have collected and failed to collect, if she did so fail, and what (if any) is the amount for which each or any defendant is accountable, on account of such failure to collect, and that the said referee report the evidence to be taken before him, and his opinion upon the same, to the end that on the coming in of his report such decree shall be made as shall be just.

And it was further ordered that the referee inquire and report whether any part of the moneys received by plaintiffs out of the property heretofore assigned for their benefit by George B. Evertson and wife, should be applied specifically in reduction of these claims against the defendants in this cause.

On appeal by the defendants, this order was affirmed at General Term, in November, 1855.

The references under the order then proceeded for a time before Lucius Robinson, Esq., as referee, and afterwards, before the Hon. William Kent, who, on the 7th May, 1857, made his report:

1. That six-elevenths of said bond and mortgage, with the interest thereon (making a rest at the date of the chancellor's decree, June 27, 1836), amounted to $28,807.05.)

2. That Eliza Evertson, executrix, in her lifetime, collected on said bond and mortgage several sums (the amounts and times being specifically stated) which, with the interest thereon, amounted to $14,475.22.

3. That she might, with reasonable care and diligence, have collected the whole amount of the bond and mortgage.

4. That the mortgage and its proceeds were received by Eliza Evertson in her capacity of executrix, as parcel of her testator's estate, and the proceeds were mixed indiscriminately with the proper assets of the estate.

5. That the said estate of her testator, and her own estate, have been fully administered, the proceeds of said bond and mortgage being included in the distribution of the estate of Nicholas Evertson, which was distributed as follows: One-third to Margaret S. Richards and her husband, Henry S. Richards, in right of his wife; one-third to John Givan, husband of Mary Ann Givan, in right of his wife; and one-third to Edgar Evertson. That each of said shares so distributed exceeded $10,000, and each was equally benefited by said mortgage and its proceeds; and that the parties interested in those several estates have all participated proportionately in that benefit.

6. That any amount to which the plaintiffs should be held entitled should be paid as follows: One-third by the four

children and widow of Henry S. Richards (now Mrs. Morse); one-third by Mary Ann Givan and her daughters, Mrs. Morse and Mrs. Crosby; and one-third by Mrs. De Mott (widow of Edgar Evertson) and her husband, and Mr. and Mrs. Saltus (her daughter).

7. That the estate of Eliza Evertson had been distributed differently, in two respects, from that of Nicholas Evertson, her husband, viz., one-third had gone to James S. Richards, and one-third directly to Mrs. Givan.

8. That the moneys realized lately by the plaintiffs from the deed of trust to Alfred Raymond, ought not to be applied in reduction of the amount to be found due to them on account or by reason of the mortgage; that deed was executed in 1827, long after the assignment, and with no reference thereto, and judging from all the evidence adduced upon the subject, there was due from George Evertson to the estate of Walter Evertson, deceased, and to the original plaintiffs in this suit under his will, an amount exceeding all the proceeds of the trust deed in their favor, independently of the said mortgage and their interest therein, and of their claim in that behalf against the said George B. Evertson.

Accompanying the report were the minutes of the evidence taken on the reference. On the reference, the complainants offered a copy of the mortgage made by Stephens to George B. Evertson and John Givan, dated April 16, 1822, marked as read on the hearing of the appeal before the chancellor. This was objected to by two of the counsel as incompetent evidence against the parties represented by them. It was received against the objection and marked as an exhibit.

The copy of assignment of mortgage from George B. Evertson to Eliza Evertson, certified as read on hearing before the chancellor, was also offered, objected to and objection overruled, and read.

The counsel for plaintiffs referred to the first answer in the original suit for the purposes of the account, and to show admission of existence of bond and mortgage and the subsequent transfer. Defendants objected that Mrs. Evertson's answer cannot be read as against these defendants. Read,

subject to objection. The bill, answer and further answer in original suit was marked as read on hearing.

The plaintiff's counsel also produced and filed a copy of the complainant's depositions in the original suit, marked read on the hearing; also copy of complainant's exhibits marked in the same manner. The defendants' counsel objected to the papers; the same objection as to the other papers introduced as papers in the original suit.

The case was brought on for hearing, on the pleadings and proofs and referee's report, at a Special Term of the Supreme Court, held in the city of New York, on 28th June, 1858 ; and thereupon it was considered and adjudged that all objections made by or on behalf of defendants to testimony on behalf of plaintiffs, as stated in the report and statements of testimony by or before the referees, in the orders and proceedings in the action, and all the exceptions in behalf of the defendants to the several decisions of the referee in the admission or rejection of testimony, as returned or reported by said referee, be disallowed and overruled ; and that plaintiffs recover against the defendants the sum of $31,112.31, the whole amount of six-elevenths of said bond and mortgage, with interest to the date of the judgment, and costs, as follows : 1. Against James N. Richards, $2,074.28 (being one-fifth of one-third of said sum), with proportion of costs. 2. Against the executors of Henry S. Richards (as representing his widow and his other children), $8,297.14 (being four-fifths of one-third of said sum), with proportion of costs, only to be levied of the property of the deceased. 3. Against Mary Ann Givan, as administratrix, with will annexed, of John Givan, deceased, $10,371.42 (being one-third of said sum), with proportion of costs. 4. Against Mortimer De Mott, and Adeline, his wife (widow of Edgar Evertson), $3,457.45 (being one-third of one-third of said sum), with proportion of costs, to be realized only from her separate property. 5. Against Francis H. Saltus, and Eliza H., his wife (daughter of Edgar Evertson), $6,914.26 (being two-thirds of one-third of said sum), with proportion of costs, to be realized only out of her separate property.

Exceptions to this judgment were filed and appeals taken, by all the defendants, to the General Term, where the judgment was modified by reducing the plaintiffs' recovery from $31,112.31 to $15,621.48, being the amount of the moneys actually received by Eliza Evertson, executrix, on the bond and mortgage, &c., with the interest thereon; and apportioning said last mentioned amount among the defendants, as apportioned by the judgment of the Special Term.

From this judgment and from the order or decree of the Court of Chancery, made on 27th June, 1836, the defendants, except James N. Richards, appealed to this court. The plaintiffs also appealed from so much of the judgment as modified that of the Special Term by reducing the amount thereof from $31,112.31 to $15,621.48.

After filing the present bill, in 1840, and before answers were put in, Maria E. Evertson, one of the complainants, intermarried with John C. Brigham, and by an order of the Court of Chancery, the suit was revived and ordered to proceed in the names of Henry H. Evertson and John C. Brigham and Maria, his wife, as complainants. In March, 1865, on application to this court, upon papers showing that Henry H. Evertson, one of the plaintiffs, had assigned his interest in the action and the judgment recovered thereon, to Maria E. Brigham, the other plaintiff, and that since said assignment she had died, and William W. Green had been appointed administrator of her estate, an order was made substituting Green as sole plaintiff.

*M. Bidwell* and *D. Hawley*, for the plaintiffs.

*B. W. Bonney* and *S. Sanxay*, for the defendants.

WRIGHT, J. This controversy, the determination of which, on the merits, depended upon the application of the plainest legal principles to facts scarcely controverted, has outlived all the original parties to it. The complainants were the children of Walter Evertson, who died in 1811, leaving a will, whereby the residue of his estate (after a bequest of $5,000 to his widow, in lieu of dower) was given to the com-

plainants, and the executors named, among whom was George
B. Evertson, the brother of the testator, were appointed their
guardians during their minority. George B. Evertson alone
took upon himself the office of executor and guardian. The
value of the real and personal estate that came to his hands
is not distinctly known, as he never accounted, as executor
or with his wards, having died insolvent before the latter
reached their majority; but from his declarations and other
proofs in the case, it must have exceeded the sum of $20,000.
In September, 1817, he paid to the testator's widow the
legacy of $5,000, and took from her a release of her claim
for dower; thus leaving what remained of the estate, the
rightful property of the complainants, under the will of their
father. In the spring of 1823, he invested $6,000 of moneys
belonging to the estate, in certain securities, and it is this
investment, and his subsequent course in respect thereto, that
gave rise to the protracted litigation. The investment was
made under these circumstances: Previous to April, 1822,
Evertson, John Givan and James W. Stephens, were jointly
concerned as owners and proprietors of the Dutchess Cotton
Factory, and carried on the same as copartners. Evertson
and Givan, about the time last mentioned, sold out their
interest in the factory to Stephens, and retired from the firm.
In adjusting their accounts there was found to be a large
balance due to each of the retiring partners, and to secure
the payment of a part of those balances, Stephens executed
a joint bond to them for $11,427 and interest; and further
to secure the payment thereof, he executed to them a mort-
gage upon the machinery in the factory, in which bond and
mortgage Givan was interested to the amount of $5,000,
and the residue of the debt belonged to Evertson. In the
spring of 1823, Stephens sold out his interest in the estab-
lishment and machinery to the trustees of the wife of Joshua
Dyett. The purchasers were desirous that a great part of
the purchase-money should remain on mortgage, but Evert-
son would not consent to wait for the money due him on the
mortgage given by Stephens on the machinery, as he wanted
his money to pay off a debt to the Manhattan Bank. He

agreed, however, to accommodate the purchasers by substituting $6,000 of the money in his hands, of the estate of Walter Evertson, and let it remain on the mortgage until Henry, the eldest of the complainants, should become of age, about eight years thereafter. Accordingly it was arranged that the purchasers, together with Stephens, should give a new bond to Evertson and Givan, for $11,000, to secure the loan of the moneys belonging to the estate of Walter Evertson, and the $5,000 due to Givan, and that the old bond and mortgage should remain as collateral security for the payment of the money for which the new bond was given. The new bond was accordingly given, and Evertson, instead of receiving from the purchasers the $6,427, and paying back to them the $6,000 belonging to his brother Walter's estate, received only the balance of $427, and substituted the $6,000 belonging to such estate, by retaining that amount of money in his hands and applying it to his own purposes. The old bond and mortgage were accordingly indorsed down to the $11,000, of which $5,000 belonged to Givan and the residue to the estate of the complainants' father, and the purchasers from Stephens, at the same time, added a schedule of some new articles of machinery to the mortgage, as a part thereof, and to increase the security, which security was also indorsed on the mortgage and signed by them. In respect to the particulars of this transaction there was no conflict of evidence. All the obligors in the new bond, and the purchasers of the machinery, understood, at the time, that the $6,000 actually belonged to the estate of the complainants' father and not to George B. Evertson; and Evertson himself, frequently afterwards, by his letters and his parol admissions and declarations, recognized the bonds and mortgage as a security belonging to that estate, and the interest thereon, as the principal means upon which the complainants were dependent for their support.

Three years afterwards the difficulty began, by a breach of trust on the part of the executor and testamentary guardian. George B. Evertson, in April, 1826, being indebted to the estate of his brother, Nicholas Evertson, by a written instru-

ment, assigned the bonds and mortgage to Eliza Evertson, executrix of the estate, by way of collateral security for such indebtedness, and without prejudice to the right of the executrix to proceed against him to compel payment of the debt, notwithstanding the assignment. It is conceded that no consideration was paid at the time of the execution of the instrument, and that it was made to the executrix for the security of a debt before that time due to the estate of Nicholas Evertson, then remaining unpaid. Not even an extension of the time of payment of the original debt of George B. Evertson was stipulated for; but in the assignment itself, the right of the executrix to proceed and collect the debt from Evertson, notwithstanding the assignment, was expressly reserved. Subsequently, in concert with Givan, the executrix took proceedings to collect the money secured by the bonds and mortgage, and before the action was first brought to a hearing, had realized, by reason thereof, for the benefit of Nicholas Evertson's estate, nearly the sum of $2,500. In June, 1830, the complainants brought their action in the late Court of Chancery, against Eliza Evertson, as executrix of such estate, alleging that they were the rightful owners of six-elevenths of such bonds and mortgage, and praying that the executrix account to them for any money received by her upon the same, or by means thereof; that the bonds and mortgage, and all benefit thereof, excepting only the interest of Givan and his assigns in the same, be decreed to the complainants, and that the executrix, in the meanwhile, be restrained from collecting or receiving the moneys due or to grow due thereon. The executrix answered, and claimed the part of the mortgage assigned to her, as belonging to her as such executrix; and the vice-chancellor of the first circuit, on the pleadings and proofs, decided that she, as executrix, had the prior and better equity to the property in question. The chancellor, on appeal, reversed that decision, and ordered and decreed that the complainants (the children of Walter Evertson) were entitled to the moneys secured in the name of George B. Evertson, by the bonds and mortgage, or so much thereof as it should appear was

due from Evertson at the time of his death (in 1829), to the complainants, on account of the estate of their father, and directed a reference to ascertain the amount then due, or at least so far as was necessary to determine that an indebtedness existed to the extent of the securities, or the moneys secured thereby, and the interest thereon from the time when the interest was last paid to George B. Evertson, or for the benefit of the complainants; and also to ascertain what had been received by Mrs. Evertson on the mortgage, and how much was then due on it, and reserving further direction, except as to the costs of the appeal.

The decree of the chancellor was made and entered on the 27th June, 1836, and no appeal was taken therefrom by the executrix. It determined that the complainants were·the rightful owners of six-elevenths of the bond and mortgage, it being their money, to the extent of $6,000, invested by George B. Evertson in those securities; and that Mrs. Evertson, as the executrix of Nicholas Evertson, or otherwise, acquired no right to it or its proceeds, as against them. As between the complainants and the executrix of Nicholas· Evertson's estate, it settled their rights and her liability, and as no appeal was taken from the decision, but the same was acquiesced in by such executrix, I think it became the law of the case. But if the decree was not conclusive, and is now open for review, it was right. The evidence showed clearly that the complainants' money, to the amount of $6,000, was invested by George B. Evertson in the bond and mortgage. They never parted with their interest in the mortgage, and had a right to follow it and its proceeds, into the hands of any one, unless it were a *bona fide* purchaser for value, and without notice; and the *onus probandi* was upoñ the party claiming to have acquired title in that way, and not upon them. Mrs. Evertson, the executrix, acquired no right to it or its proceeds, as against them. She was no purchaser for value. She received it not only on accöunt of an antecedent debt, but as a mere collateral security, without giving time, and without losing or impairing any right or remedy which, as executrix, she had against George B. Evertson. . Evertson

having assigned it to her as security for his own debt, in violation of his trust, such assignment neither extinguished or impaired at all the complainants' rights. They continued to be, as against her or Nicholas Evertson's estate, the rightful owners of the mortgage, as much as they were before the assignment, and she was accountable to them for it, and for all the proceeds of it which she collected.

The right, then, of the complainants to six-elevenths of the mortgage and its proceeds, and the liability of the executrix of Nicholas Evertson to respond to them for all moneys received by her upon it, or by reason of the security, were fixed as early as June, 1836, and nothing was required, preparatory to a final decree, but for a master to take and state an account of the amount of moneys received by Mrs. Evertson, and what was still due on the mortgage, and to ascertain whether George B. Evertson, at the time of his death, in 1829, was indebted to the complainants, as their testamentary guardian, to the extent of the security. But before this reference could be had, Mrs. Evertson, the executrix and sole defendant, died, and the cause thereby abated. · In 1840, the present bill was filed in the nature of a bill of revivor and supplement, and the children and legatees of Nicholas Evertson, and also of his executrix, Eliza Evertson, were made defendants. It recited the former bill, and its allegations, and the proceedings under it, down to the decree of the chancellor, and further stated the death of Mrs. Evertson, in April, 1837; that the defendants were her children and the children of her husband, Nicholas Evertson, and his legatees and next of kin; that all the assets of the estate of Nicholas Evertson had been paid over and distributed by her, as acting executrix of such estate, in her lifetime, among his children and legatees; that the moneys received by her upon and by means of the bond and mortgage, were distributed as part of those assets, and that Mrs. Evertson, by her arrangements and dealings with other persons in relation to such bond and mortgage, had made herself personally liable for the amount of the complainants' interest therein, and prayed that the decree of the ·chancellor might be carried into full

effect, and for further relief. All the defendants answered separately, admitting the prior proceedings in the suit, as alleged, and also that they were the children and legatees, &c., of Nicholas Evertson; but one of the adult defendants, and the infants, by their general answer, put in issue the allegations that all the assets of such estate which had come to the hands of his executrix in her lifetime, were by her paid over and distributed to or among his heirs and legatees, or those standing in the right of such heirs or legatees; and this question, and the further one of the proper rate of contribution by the defendants, in satisfaction of the complainants' demand, has lengthened the controversy more than a quarter of a century, and added, from time to time, new parties defendants to it, as the original defendants either died or attained their majority, or intermarried with other persons. In March, 1843, the cause was brought to a hearing before the assistant vice-chancellor of the first circuit, upon the original and supplemental pleadings, and the proofs therein before the abatement, but without new proofs as to whether the defendants were the proper accounting parties, when an order was made declaring the rights of the complainants substantially as settled by the chancellor, and referring the cause to a master, for the proper accounts, with certain directions. From this order, establishing no new principle affecting the rights of the original parties to the cause, the defendants appealed to the chancellor, and upon this appeal the case was hung up until after the abolition of the Court of Chancery, and the suit and proceedings, under the judiciary act of 1847, had passed into the Supreme Court. In February, 1850, the appeal was heard at a General Term of the Supreme Court, which court decided, after argument, that the matter of the inquiries as to who had received the assets of Nicholas Evertson's estate, must be investigated by proofs in chief in the cause, before a reference could properly be ordered, and on this ground alone the court reversed the vice-chancellor's order, referring the cause specially for the required proofs. The defendants' counsel now make the point that the General Term had no power to

modify the order of the vice-chancellor, in the respect men-
tioned, and that that error should now be corrected by this
court, by reversing the judgment against the defendants and
dismissing the bill. I entertain no doubt that the court pos-
sessed the power exercised; besides, the defendants fully
acquiesced in the disposition made of the appeal. In March,
1854 (the required proofs having been taken), the cause came
on again at a Special Term of the Supreme Court, when a
reference was ordered to take and state an account of princi-
pal and interest, of six-elevenths of the bond and mortgage,
from their date to the date of the referee's report, and also
an account of all moneys received by the executrix of Nicho-
las Evertson, in her lifetime, or which she might, with care
and diligence, have collected, upon or by means of the
bond and mortgage; and also to inquire and report which
of the defendants (if any), or of those whom the defendants
represent, received any portion of the moneys collected by
Mrs. Evertson by reason of the bond and mortgage, and how
much, and how the same was received, whether directly, as
part of the money derived from the bond and mortgage, or
as part of the assets of Nicholas Evertson's estate, or of
Eliza Evertson's estate, or how otherwise, &c. In 1857, the
referee made his report, with the evidence taken before him,
and in June, 1858, final judgment was rendered against the
defendants (apportioning the recovery amongst them) for
the whole amount of six-elevenths of the bond and mortgage
($6,000), and interest thereon, which judgment, on appeal,
was modified by reducing the recovery to the amount of the
moneys, and interest thereon, actually received by Mrs. Evert-
son, as executrix, upon or by means of the mortgage.

The judgment, as modified, seems to me right. It appears
by the admissions in the pleadings, and proofs in the cause,
that the executrix received, as proceeds of the bond and
mortgage, some $4,300, which she mingled indiscriminately
with the proper assets of her husband's estate, all of which
money, with the exception of $800, were collected by her
subsequently to the filing of the original bill, by which she
had notice that the trust money thus collected belonged to

the plaintiffs. Neither the estate of Nicholas Evertson or his executrix, had any right to the mortgage or to its proceeds. As executrix, or otherwise, she gave no value therefor. She took the mortgage, not even in discharge of an antecedent debt due her testator's estate, but by way, merely, of collateral security for such debt, without relinquishing any right or security which she before had or held against the debtor. Had the case been determined in the lifetime of the executrix, the estate of Nicholas Evertson would unquestionably have been bound to respond to the plaintiffs, if not for their whole interest in the mortgage, at least for so much of such interest as had been actually received and appropriated by the executrix for the benefit of the estate. Mrs. Evertson did not die until 1837 (some seven years after the filing of the original bill), and before her death she had fully administered her husband's estate, and distributed all its assets, the moneys collected on the bond and mortgage being included in the distribution. The facts that there had been a full administration of such estate by the executrix, in her lifetime, and that its assets had been paid over, to an amount greatly exceeding the moneys collected upon the mortgage, or even the whole interest of the plaintiffs therein, in equal third parts, to his three children, viz., Mary Ann Givan, Margaret S. Richards and Edgar Evertson, respectively, or to the persons representing their shares, clearly appeared by the proofs in the case. The moneys, then, actually realized by the executrix, by means of the bond and mortgage, and to which she never had any right, were received by the defendants as assets of their ancestor's estate. These moneys belonged to the plaintiffs. They constituted a debt against the estate, and the defendants, as legatees or next of kin, having received of its assets an amount largely in excess, are equitably bound to refund. But they are liable to the plaintiffs on a further ground. The money which Mrs. Evertson received, and for which she never gave any value, came into their hands without their giving any value or consideration for it. The plaintiffs have the same right to the proceeds of the mortgage as they would have had to the mortgage itself

if the defendants had received it instead of the proceeds. Their rights cannot be altered by the fact that the defendants received, at the same time, other money. If they got the plaintiffs' money, without giving value for it, although it was mixed with other moneys, they are answerable for it. They have no legal or equitable right to keep it. Their position in respect to the plaintiffs' claim, is simply this: The executrix of Nicholas Evertson's estate received moneys belonging to the plaintiffs, and for which she never gave value. These moneys were treated as assets of her testator, and as such paid over to the defendants, who were his next of kin and legatees, in the administration of his estate. They never gave any value for them. It was the plaintiffs' money when Mrs. Evertson received it, and has never ceased to be their money. It is still their money, and they are entitled to recover it from the defendants, who have no right to keep it. It is unimportant whether Mrs. Evertson did or did not know, when she collected the money secured by the mortgage, that it belonged to the plaintiffs. She had notice by the filing of the bill that it was theirs, and if she afterwards retained it, and gave it to others, or refused to deliver it to the plaintiffs, she and those who received it or its proceeds, without giving value for it, are accountable to the plaintiffs.

A single further question is to be noticed. Two answers were put in by the original defendant, Mrs. Evertson, to the bill of complaint; in the first, she admitted having collected, as executrix, $800 on the mortgage, and in the second, that subsequently to putting in the first answer, she had received thereon nearly $1,700 more. In taking and stating the account of moneys actually received by her upon or by means of the security, the referee, under objection, allowed the answers to be read in evidence. It is claimed that they were incompetent evidence against the defendants. I do not regard the objection as tenable. These answers constituted a part of the pleadings in the suit, and were on that ground, if upon no other, properly admitted on the reference. The bill filed in 1840 was but a continuation of the suit commenced against the executrix of Nicholas Evertson in ·1830.

That suit was suspended, not terminated, by her death. In courts of equity, an abatement of a suit by the death of a party, amounts to a mere suspension, and not to a determination of the suit. It may again be put in motion by a bill of revivor, and the proceedings being revived, the cause proceeds to its regular determination as an original bill. The bill of revivor is not the commencement of a new suit, but the mere continuation of the old suit. " A bill of revivor and supplement," says Chancellor KENT, " not only continues the suit upon abatement, but it supplies defects arising from some event subsequent to the institution of the suit. It is a compound of a supplemental bill and a bill of revivor, and in that character it states the original bill and proceedings thereon, and the subsequent writ; and it states also the consequent alteration and acquisition of interest with respect to the parties." (*Westcott* v. *Cady*, 5 Johns. Ch., 354.) The plaintiffs were entitled to the benefit of all the proceedings in the cause prior to the suspension. They were not to try over questions that had been settled, but to proceed with the case at the point at which it was suspended by the death of Mrs. Evertson; the new bill being merely a continuation of the suit. Of course, being the same cause, the evidence taken before the abatement is evidence in all its stages; and so far as the merits are concerned, the cause can only rightfully be heard upon those proofs, together with the pleadings. The defendants have appealed from the decree of the chancellor, thus conceding the proceedings subsequent to the filing of the bill, in 1840, to be but a continuation of the suit, for if that decree is reviewable here, the proofs and the pleadings upon which it is founded must be before the court, else it would be impossible to determine whether it is or is not erroneous. But again. The answers of Mrs. Evertson were admissible evidence against the defendants on other grounds. Executors and administrators represent the testator or intestate as to personal estate, having the same power as he had, not only for receiving money, but also for admitting the receipt of it, so as to charge the estate therewith, and thereby to bind the next of kin and legatees in the same manner that

admissions by the testator or intestate would have done. If the executrix had delivered to the plaintiffs the mortgage, or its proceeds, the defendants could not have recovered them. They were assets in her hands, and her acts would have bound the defendants, unless collusion or fraud could have been shown.   This proves that, in her character of executrix, and *quoad* these assets, her admissions are binding on them. Holding the defendants only liable to the amount of the assets they actually received from Nicholas Evertson's estate, the admissions of the executrix bound these assets in their hands.   It is not analogous to the admissions of a former owner of personal property in cases of purchase for value, but is analogous to such admissions in cases of representation; and in cases of representation, admissions by prior owners are admissible evidence.   Besides, the transfer to the defendants by their trustee was not for a valuable consideration, so that they are not even within the rule as to admissions by former owners of personal property. (*Brisbane* v. *Pratt*, 4 Denio, 63.)   I think the judgment of the Supreme Court should be affirmed.

Judgment affirmed.